UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENRY SEAMAN d/b/a THE HENRY APARTMENTS f/k/a THE HILLSIDE PLACE APARTMENTS,

Plaintiff,

v.

STATE FARM FIRE & CASUALTY CO.,

Defendant.

CASE NO. C06-1495JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on cross motions for summary judgment from Defendant State Farm Fire & Casualty Co. ("State Farm") and Plaintiff Henry Seaman (Dkt. ## 11, 17). The court has considered the papers filed in support and opposition to the motions. For the reasons stated below, the court DENIES Defendant's motion for summary judgment (Dkt. # 11), and GRANTS Plaintiff's motion for partial summary judgment (Dkt. # 17).

ORDER – 1

## II. BACKGROUND[1]

Mr. Seaman owns an apartment building, "The Henry Apartments," which he purchased from Russell Enterprises LLC ("Russell"), on or near May 31, 2002. State Farm issued Russell a property insurance policy, effective from April 1998 to January 2001 (the "Policy"). During the Policy period, the apartment building suffered physical damage from rot and decay that went undiscovered until 2004, approximately 2 years after Russell conveyed the property to Mr. Seaman.

In April 2006, Mr. Seaman notified Russell that he believed he had a claim against it based on a failure to disclose defects in the apartment structure. Mr. Seaman indicated that he would forego legal action in exchange for an assignment of Russell's rights under the Policy. In May 2006, Russell executed an assignment. Mr. Seaman then submitted a claim under the Policy, which State Farm denied. Mr. Seaman filed this action seeking a declaratory judgment that the Policy entitles him to coverage pursuant to Russell's assignment of rights.

## III. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by producing evidence that negates an essential element of the

---

[1] For purposes of their cross motions, the parties stipulate to the following facts as set forth in their joint submissions. See Stipulated Facts (Dkt. # 12); Supplemental Stipulated Facts (Dkt. # 16).

ORDER – 2

non-moving party's case, or (2) after suitable discovery, by showing that the non-moving party does not have enough evidence of an essential element to carry its burden of persuasion at trial. Id. at 322-23; see also Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden, the opposing party must present evidence to support its claim or defense. Cline v. Indust. Maint. Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

Here, the resolution of the parties' motions turns on the interpretation of an insurance policy, which, under Washington law, is a purely legal question for the court. See Overton v. Consol. Ins. Co., 38 P.3d 322, 325 (Wash. 2002). The court must give the terms of a policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Id. (internal quotation omitted). The court construes terms within a policy as defined, while it assigns undefined terms their ordinary meaning. Boeing Co. v. Aetna Cas. & Sur. Co., 784 P.2d 507, 511 (Wash. 1990).

If the policy language on its face is fairly susceptible to two different but reasonable interpretations, the court will apply the interpretation most favorable to the insured. Allstate Ins. Co. v. Peasley, 932 P.2d 1244, 1246 (Wash. 1997); Allstate Ins. Co. v. Hammonds, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (reasoning that ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible"). A court must construe ambiguity against the insurer "even where the insurer may have intended another meaning." Allstate Ins. Co., 865 P.2d at 562. Because coverage exclusions "are contrary to the fundamental protective purpose of insurance," courts are to construe them strictly against the insurer and are not to extend them

ORDER – 3

"beyond their clear and unequivocal meaning." Stuart v. Am. States Ins. Co., 953 P.2d 462, 464 (Wash. 1998) (citation omitted).

The parties' dispute centers on what constitutes a "loss" under the Policy. The Policy provides, in pertinent part: "[w]hen a limit of insurance is shown in the Declarations for Coverage A, we will pay for accidental direct physical loss to buildings at the premises described in the Declarations caused by an insured loss." Stipulated Facts, Ex. A at 10. Mr. Seaman argues that a loss accrues at the time of physical damage. He therefore contends that because the building suffered physical damage during State Farm's Policy period, he has a right to the coverage to which Russell would have been entitled. State Farm counters that a loss is not physical damage, but resulting financial harm. State Farm reasons that both now and at the time Russell assigned its claim, Russell had already sold the property at a price that did not account for the damage; thus, according to State Farm, Russell incurred no loss as a result of the undiscovered damage. State Farm requests a declaration that Mr. Seaman can recover nothing on Russell's purported claim.

The court concludes that, contrary to State Farm's proposed construction, a loss under the Policy accrues to the policyholder as soon as the underlying physical damage occurs. The Policy covers "accidental direct physical loss to buildings at the premises . . . ." Id. The Policy further provides that State Farm insures "accidental direct physical loss to property covered under this policy unless the loss is [limited or excluded]." Id. at 14. This language equates loss with physical injury. Additional terms and conditions of the Policy demonstrate that a loss occurs when the event causing damage occurs. For example, the insured must give notice of a "loss" by providing a description of the "lost or damaged property" – as opposed to the cost of repair or deduction in the selling price. See id. at 26, ¶ 3.b. Further, the Policy's list of exclusions characterize "loss" as the

ORDER – 4

result of events causing physical injury, such as "earth movement" and "glass breakage." Id. at 14-15. According to the Policy's "valuation" proviso, the insured is entitled to benefits regardless of whether it pays to replace the property. Id. at 24, ¶ 2. There is nothing in the Policy to suggest that the insured must first repair the property or otherwise incur some financial detriment before accruing the right to recover.[2]

The court further notes that its interpretation of the Policy is consistent with the rationale of Ellis Court Apartments Ltd. v. State Farm Fire & Cas. Co., 72 P.2d 1086, 1090 (Wash. Ct. App. 2003). In Ellis, the Washington Court of Appeal held that loss under the terms of a property insurance policy commenced at the time physical damage occurred, not later, when damage was discovered. Id. The court relied on the absence of language in the policy to condition or limit coverage to damage discovered before the policy period's expiration. Id. Moreover, this court held in Sirius v. Am. Ins. Co., under strikingly similar factual circumstances, that loss means physical injury, not financial detriment. See No. 05-338, 2005 WL 1287965, at *3 (W.D. Wash. May 25, 2005) (holding that an insurer was liable to policyholder's assignee for physical damage following conveyance of property, notwithstanding the fact that the sale price did not reflect a price reduction for damage).

---

[2]State Farm's reliance on the "oft-stated principle" that property insurance is a personal contract of indemnity is unavailing. See Def.'s Mot. at 5 (quoting Metro. Mortgage & Securities Co., Inc. v. Reliable Ins. Co., 390 P.2d 694, 695 (Wash. 1964) for the proposition that "a policy of fire insurance does not insure the property," but indemnifies "the insured against loss resulting from the destruction of, or damage to, his interest in that property"). Here, it is undisputed that Russell must have suffered a loss to trigger coverage – i.e., indemnification. Rather, the parties' dispute concerns how to define loss. As noted above, the court looks to the plain language of the Policy in construing this term.

ORDER – 5

The court holds that the Policy provides that a loss accrues to the policyholder as soon as the underlying physical damage occurs. Assuming that the property suffered physical damage from a covered cause of loss while Russell still owned it, Russell had accrued a claim when it sold the property to Mr. Seaman. Russell therefore had a claim for loss that it could assign to Mr. Seaman.[3] The court emphasizes that it makes no findings of fact in resolving this motion.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES State Farm's motion for summary judgment (Dkt. # 11), and GRANTS Mr. Seaman's motion for partial summary judgment (Dkt. # 17).

Dated this 28th day of June, 2007

JAMES L. ROBART
United States District Judge

---

[3] State Farm does not dispute in this motion that if Russell suffered a covered loss under the Policy before it conveyed the property, Russell could assign its *claim* to Mr. Seaman. See Def.'s Mot. at 7 (noting that although "Russell had no ability to assign the insurance contract itself," to Mr. Seaman, Russell "could assign . . . any right it had to collect benefits to which it was entitled . . . .").

ORDER – 6

ORDER – 7